Weldon, J.,
delivered the opinion of the court:
In the commencement of this suit a petition was filed claiming for other and different causes of action than those embraced in the petition which is to be considered for the purposes of the case as now developed. In the amended petition (and which performs on the part of the claimant the function of the entire pleading), while several causes of complaint are alleged, the scope of the claim, as now made by the petitioner, relates, first, to the performance of extra work arising out of the rebuilding of the United States frigate Constitution; and, second, wharf-age for the Constitution and Potomac while berthed at the wharf of the claimant$ and, third, the claim of $1,000 set forth in the fifth finding.
To the case made by the pleading the defendants file, the general issue, and, by way of counter-claim that at and before *202 the institution of this suit the firm of Wood, Dialogue & Oo., of which the claimant is surviving partner, became indebted to the defendants in the sum of $8,070.31; that said indebtedness has not been paid; that in October and November, 1874, the said firm entered into certain agreements with the defendants; that said firm agreed, for the certain consideration therein named, to construct six iron boilers for steam vessels, in good and workman-like manner and of the best materials; that they did not construct the said boilers in a workman-like manner and of the best material; that they were paid for the same on the faith and assurance that they were of good workmanship and of good material; that in consequence of the defective construction of the boilers and the use of imperfect material the defendants were subjected to the expense of $8,070.31 in attempting to bring said boilers to the standard recognized and required by the agreement.
The facts found by the court show, that in the month of March, 1876, the parties, by correspondence, made a contract to do the work required to complete the United States frigate Constitution for the sum of $39,000, in accordance with specifications, and to the full satisfaction of the superintending officer or officers of the defendants and of the bureau. Work upon sails, rigging, boats, and outfits was not to be considered as included in the work to be done upon the vessel.
There is no controversy as to the payment of the $39,000. The contention upon the part of the plaintiff is, that in the execution of the work under said contract and at the instance and request of the superintendent, the firm of which the claimant is the surviving partner performed a large amount of extra work beyond the requirement of the contract; that while engaged in the work under the agreement, and beyond the requirements of the same, the wharf of the claimant was used by the frigate Constitution and the Potomac, the latter being engaged in the delivery of material by the defendants, to be used by the claimant in rebuilding the Constitution.
The theory of the claim for wharfage is, that by the usage of the trade or business it is customary to charge for the use of the wharf beyond a certain time; and that by the neglect and delay of the defendants both ships were required to remain much longer than was necessary to perform the contract and' extra work.
*203 The findings show that on the 11th day of November, A. D. 1876, Naval Constructor Hartt was detailed by the Department to superintend the work on the Constitution; that the most of the work was performed under his immediate supervision and by his express direction. By the designation of the agreement and his relation to the performance of the work he passed in judgment upon all the work performed by the claimant after his appointment, and by inspection and observation determined the quality and quantity of work performed prior to his connection with the contract.
It will be observed that the agreement is silent upon the subject of wharfage for the ship during the progress of the work; but it is insisted by the claimant that there was unnecessary delay upon the part of the United States in furnishing the material for the repair of the vessel, and because of such delay the claimant is entitled to recover for wharfage; that it was a custom in the trade of ship-repairing to pay for wharfage during the time the wharf was occupied by the vessel being repaired, and the vessel engaged in the transportation of the material used for such repair. The custom, if established, is not contradictory of the terms of the contract, as it does not provide as to the wharfage..
It seems, from the allegations of the petition and the facts of the record, that the firm of Dialogue & Co. were ship-builders at Camden, N. J., and as such engaged with the defendants to do certain work on a vessel of the United States, which, from the magnitude of the repairs, amounted to a substantial reconstruction of the ship. Without a wharf or waters in which the ship could float it would be impossible for the claimant to perform his agreement; and the wharf, in the execution of the contract, is as much a part of the machinery to perform the agreement as any part of the claimant’s shop or yard. The responsibility to perform the agreement (beyond the material which was to be furnished by the Government) included a liability upon the part of the claimant to provide his own means and facilities; and no additional Compensation is to be allowed for such means, unless a well-established custom recognizes and requires such allowance.
All other matters being eliminated, the controversy is narrowed to the extra work, the wharfage, the $ 1,000 set out in the fifth finding, and damages alleged by the counter-claim. *204 No contention arose between the parties as to the extra work until the completion of the contract, and then only as to whether the amount certified to as extra by the naval constructor was included in the original agreement for which $39,000 were to be paid.
The Department insisted that much less than the amount certified was due the claimant for extra work. Much of the discussion of counsel was devoted to the findings of a naval board, organized by the Department, and to which the claimant was not a party; but the result of the investigation of that board is not material in this proceeding under our view of the law. There is nothing in the record to impeach the good faith of the agent of the Government in his superintendence of the work; and from his experience in that particular class of labor we must presume he had the capacity to guard the interests of the United States both as to the quality of the work, and in the determination of the question as to what was or was not extra work, under the specifications of the undertaking of the claimant.
The findings show that Naval Constructor Hartt was detailed on the 11th day of November, 1876, and from that time supervised and superintended the execution of the contract and directed from time to time what extra work should be performed by the contractor. Hartt became and was from the time of his detail the responsible and authoritative agent of the United States, and as such ordered and directed the claimant not only in the performance of the agreement as to the work specially provided by the contract, but also in the addition of such extra work as they might agree from time to time to attach to the original undertaking. It was a contemporaneous construction of the parties, which determined and fixed the liability beyond the power of repudiation upon the part of either. (Scott v. United States, 12 Wall., 444, and 7 Ct. Cls. R., 226; Eastern Railroad Go. v. United States, 20 Ct. Cls. B., 45.)
The evidence showed how difficult it is in some instances to determine the line dividing contract from extra work; that naval constructors and experts would often disagree in opinion and judgment on that question ; that the board, organized by the Department to investigate and determine the amount of extra labor, was not harmonious in the result of its examination. Taking that condition of proof, in connection with some *205 of the established rules of construction, the court in the findings has adopted the certified bills of the superintendent as the basis of the value of the extra work.
Upon the question of wharfage the court does not find, that at the place where the labor was performed, there was a general custom to charge wharfage for the ship;, and without such a finding no liability can attach to the United States. The contract not providing for such compensation, there can be no recovery on that item of the petitioner’s claim. As to the Potomac, it is not shown that the delay was wholly the neglect or fault of the United States, nor is it shown that the defendants were notified that wharfage would be charged for the receiving-ship. The vessel had a right to remain at the wharf a reasonable time to discharge its freight for the use of the claimant in rebuilding the ship Constitution. That item of the petition must be disallowed.
The contention on the counter-claim involved the question of fact whether the boilers upon which it is alleged the United States expended $8,070.31 were in fact the boilers which had been manufactured for the defendants. We have examined the testimony relating to that question, and have concluded that the testimony does not establish by a preponderance the fact, that the boilers sold to the defendants and the boilers upon which was expended the sum alleged in the counter-claim are identical. Upon the whole case the court finds in favor of the claimant on the item of extra work and the claim of $1,000 in fifth finding, against him on the wharfage, and against the defendants on their counter-claim. The judgment of the court is that the claimant recover the sum of $11,226.24.
At the same time with the foregoing, the court decided No. 12843, a suit between the same parties. The only item in controversy was for work likewise done upon the Constitution and under the same agreement set forth in the preceding findings dated March 1, 1876. The claimant produced an ordinary voucher for the item, given by the superintendent.
The following is the decision:
Weldon, J.,
delivered the opinion of the court:
There is no dispute in this case except as to one item in the claim of petitioner, to wit, the sum of $1,450, and as that item *206 comes within the principle of case No. 13384, between the same parties, it is not necessary to discuss it in this connection.
The judgment of the court is that the claimant recover the sum of $21,764.51.